UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD E. HOLDEMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3273 |
| | § | |
| HOMECOMINGS FINANCIAL, LLC, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER TO REMAND**

Pending before the court is plaintiff's motion to remand (Dkt. 5). After considering the motion, response, and applicable law, the court is of the opinion that plaintiff's motion to remand should be **GRANTED**.

**I. BACKGROUND**

In September 2014, plaintiff Ronald E. Holdeman ("Holdeman") filed suit in state court against defendant Homecomings Financial, LLC ("Homecomings") to quiet title to a property that Holdeman owns, but upon which he believes Homecomings holds one of two liens on the property. Holdeman seeks declaratory and injunctive relief from this court stating that the defendant's lien is void and unenforceable, as well as attorney's fees. Homecomings removed the case to federal court on the basis of diversity jurisdiction in November 2014. Plaintiff filed a motion to remand the case, arguing that the amount in controversy did not exceed $75,000, and defendant responded in opposition. The motion is ripe for disposition.

**II. LAW**

A federal district court has original jurisdiction over all civil actions where the parties are diverse and the amount in controversy is $75,000 or more. 28 U.S.C. § 1332. However, "[i]f at any

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c). "The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Here, the removing party is the defendant. The defendant can meet its burden if it is facially apparent that the claims are likely to exceed $75,000, or if the defendant sets forth summary evidence of facts in controversy that support a finding of the requisite amount. *Manguno v. Prudential and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Damages are calculated from the plaintiff's perspective. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 639–40, n.4 (5th Cir. 2004).

It can be facially apparent that a plaintiff's damages exceed the jurisdictional amount in cases involving death or severe physical injuries; multiple plaintiffs seeking punitive damages; or dollar amounts that indicate, with a favorable verdict, the plaintiff's damages would exceed $75,000. *Gilman v. Arthur J. Gallagher & Co.*, No. H-09-2355, 2009 WL 5195956, at *5 (S.D. Tex. Dec. 21, 2009). A defendant can also establish the amount in controversy by asserting facts to support a finding of the requisite $75,000, but he must meet a preponderance of the evidence burden of proof. *Manguno*, 276 F.3d at 723. This burden "forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover . . . ." *De Aguilar*, 47 F.3d at 1412. Conclusory allegations will not suffice. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). "*Any* ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (emphasis added). And, "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of removal . . . ." *Allen*, 63 F.3d at 1335.

In determining the amount in controversy for declaratory or injunctive relief, courts look at the "value of the object of the litigation." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338 (5th Cir. 2013). In other words, courts consider "the value of the right to be protected or the extent of the injury to be prevented." *Id.* at 341. Additionally, attorney's fees are included when calculating the amount in controversy if a statute provides for them. *Manguno*, 276 F.3d at 723. However, courts determining whether attorney's fees will exceed the jurisdictional amount may consider the number of parties, the complexity of the issues to be litigated, and whether the issues turn on discrete questions or law or not. *Gilman*, No. H-09-2355, at *8. For example, attorney's fees in a class action would be more likely to meet the amount in controversy than a simple contract dispute with discrete questions of law and a small number of parties. *Id.*

### III. ANALYSIS

In Holdeman's original petition in state court, he explains that he has two separate notes on a property and that he is bringing suit with regard to the "second note" he holds for $26,500. Dkt. 1-3 at 4. Holdeman wants to refinance the second note, but cannot because neither he, nor the title company, has been able to ascertain what company is servicing the second note. *Id.* More specifically, Holdeman believes that Homecomings has an adverse claim or interest in his property in relation to the second note that operates as a cloud on Holdeman's title to the property. *Id.* Holdeman argues that the claim or interest of Homecomings is invalid, unenforceable or without right against him because he has attempted to pay off the loan and Homecomings has refused to provide Holdeman information on how to do so. *Id.* Holdeman argues that on the basis of his claims, their value is just $26,500, the value of the note in controversy.

Homecomings responds that the amount in controversy is established by the market value of the property. Dkt. 10 at 1. Homecomings argues that the value of the property is $125,053, based on Holdeman's own filing of Harris County Appraisal District records with this court. Id. And even if the court only considers the amount of the second note to be the amount of damages claimed, Homecomings argues that the amount of the second note, plus attorney's fees and costs, will more than likely exceed the $75,000 threshold. *Id.*

In support of its arguments, Homecomings explains that courts in Texas use the market value of the property to determine the amount in controversy where a party seeks to invalidate a mortgage lien. Dkt. 10 at 2. However, the cases cited are distinguishable to the facts of this case. For example, the Fifth Circuit case cited explains that "the value of the property controls the amount in controversy," "*when* the validity of . . . a right to property is called into question in its *entirety*." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009). Here, Holdeman is clear that the entire right to the property is not in question, just a distinct note. The value of the object of the litigation is roughly $25,600, the amount of the lien that Holdeman seeks to refinance, but cannot, because he does not have sufficient information about exactly what is owed on the lien. The court points out that the note in question is worth just about twenty percent of the value of the property. For all these reasons, the court is not persuaded that the entire value of the property demonstrates the amount in controversy. And the remainder of federal district court cases Homecomings cites are not sufficiently analogous to persuade the court otherwise. For example, the case cited from the Southern District of Texas involved a denial of remand based on the amount in controversy, despite the fact that the homeowner only owned a one-third interest in the property, because the note he took out on the property —and which he sought to have invalidated— was for

the entire value of the house (not just his one third interest), and that amount was nearly $75,000 before attorney's fees. *Tabaraz v. JP Morgan Chase Bank, N.A.*, No. H–12–1386, 2012 WL 3527081 (Aug. 14, 2012) (Harmon, J.). Here, Holdeman is dealing with a specific note worth about twenty percent of the value of the home that he owns in entirety, not one-fifth interest in property for a note that nearly equals the entire value of the home. Further, Holdeman is not seeking to void both notes on the property, only the specific note worth $25,600, and for a reason not applicable to the other note on the property.

Homecomings also argues that it has established the amount in controversy because the second lien, though junior to the first lien, is secured by the entire value of the property at issue. However, Homecomings provides no authority for that proposition upon which the court can base a decision.

Finally, as to whether attorney's fees or costs can be added to the lien amount to satisfy the amount in controversy, Homecomings' conclusions about attorney's fees and costs do not meet its burden of proof. On its face, the case appears straightforward: there are only two parties in the case, and the specific lien and allegations are specific. And Homecomings merely lists examples of cases where a court has found a large amount of attorney's fees in cases with small amounts of damages sought, but does not compare the facts of those cases to the case before the court. Homecomings certainly provides no evidence upon which this court can conclude that the attorney's fees and costs would be worth about $50,000, double the amount of the lien at issue which is worth $25,600.

## IV. CONCLUSION

The defendant has failed to assert sufficient facts that show, by a preponderance of the evidence, that the amount in controversy is at least $75,000. For the foregoing reasons, and the law dictating that *any* ambiguities are construed against removal, the court finds that the amount in controversy has not been met. Plaintiffs' motion to remand (Dkt. 22) is **GRANTED**, and this case is **REMANDED** to the 157th Judicial District Court in Harris County, Texas.

It is so **ORDERED**.

Signed at Houston, Texas on February 19, 2015.

_____
Gray H. Miller
United States District Judge